GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Dewaun O’Sha Griffin was convicted in the Leake County Circuit Court for the murder of Daphne Nicole Harper (“Daphne”). He was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. On appeal, Griffin asserts that: (1) the circuit court erred in denying his motion for a directed verdict; (2) the verdict is against the overwhelming weight of the evidence; and (3) the jury was improperly instructed to consider the lesser crime of manslaughter only after it considered the actual charge of murder. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Since 2001, Daphne and Griffin resided at 308 Smith Lane, Carthage, Leake County, Mississippi. They had an exclusive relationship for many years, and they had one son together. On March 28, 2007, at 7:30 p.m., Daphne, along with her sister, Kenyada Harper (“Kenyada”), went to the residence to collect her belongings. While loading items into the truck, Kenyada heard two shots fired from inside the trailer.
 

 ¶ 3. Willie Huffman (“Willie”),
 
 [1]
 
 who is Griffin’s uncle and was an occupant at 308 Smith Lane, was also outside when he heard the first shot. He immediately ran inside to get his fourteen-year-old son and his sister, Linda Huffman (“Linda”), out of the living room. While in the home, Willie observed Griffin in the doorway of a bedroom located down the hall, with his arm extended up and outward in front of his body. Willie heard one shot, saw Griffin “rack”
 
 [2]
 
 the pistol, and then heard the second shot.
 

 
 *836
 
 ¶ 4. Linda, Griffin’s aunt, who also resided at 308 Smith Lane, saw Griffin crying while Daphne gathered her belongings. Linda testified that she heard doors slamming just before she heard the two shots. Linda never saw Griffin with a pistol in his hand.
 

 ¶ 5. Prior to the shooting, Angela Smith, Griffin’s mother and owner of the trailer located at 308 Smith Lane, warned Daphne not to return to the trailer because of the frequent arguments between the couple. Smith was outside during the incident, and she never heard the shots or any arguing.
 

 ¶ 6. Later that evening, Griffin was arrested and interrogated at the Leake County Jail. Griffin voluntarily gave a verbal statement and responded to questions without a demand for counsel or cessation of further questioning. The three interrogating officers each testified that Griffin stated that he saw the gun while Daphne was packing, took the gun, and starting shooting Daphne. Griffin refused to commit his statement to writing without the presence and advice of counsel.
 

 ANALYSIS
 

 1. Whether there is sufficient evidence to support Griffin’s conviction for murder.
 

 ¶ 7. Griffin argues that his motion for a directed verdict should have been granted by the circuit court. Specifically, he asserts that he did not exhibit the deliberation required for deliberate-design murder; therefore, he could only be found guilty of manslaughter. The State responds that the testimony of the eyewitnesses, along with Griffin’s own statement that he picked up the gun and started shooting Daphne, constitute sufficient evidence to convince a reasonable juror that Griffin was guilty of murder.
 

 ¶ 8. When reviewing the denial of motion for a directed verdict on an objection to the legal sufficiency of the evidence, we examine the evidence in a light most favorable to the State to determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (citation omitted).
 

 ¶ 9. Mississippi Code Annotated section 97—3—19(1)(a) (Rev.2006) defines murder as “[t]he killing of a human being without authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or of any human being.” “Deliberate design” is synonymous with malice aforethought.
 
 Hearvey v. State,
 
 887 So.2d 836, 839(¶ 5) (Miss.Ct.App.2004). Manslaughter is defined by Mississippi Code Annotated section 97-3-35 (Rev. 2006) as “[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]”
 

 ¶ 10. Griffin bases his argument on the
 
 Weathersby
 
 rule, which states: “where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [SJtate, or by the physical facts or by the facts of common knowledge.”
 
 Weathersby v. State,
 
 165 Miss. 207, 209, 147 So. 481, 482 (1933). Griffin claims that he shot Daphne in the heat of passion and without deliberate design. Heat of passion is defined as:
 

 
 *837
 
 A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 Phillips v. State,
 
 794 So.2d 1034, 1037(¶ 9) (Miss.2001) (citation omitted).
 

 ¶ 11. Griffin provides no evidence, or other argument, to show that this was a heat-of-passion killing. In fact, his argument does not fit the
 
 Weathersby
 
 rule because his claim is contradicted by the witnesses who testified at trial.
 

 ¶ 12. The interrogating officers all testified that, when Griffin was asked why he shot Daphne, Griffin stated that he just picked up the gun and started shooting. He made no statement about a struggle or argument that would indicate that the shooting occurred in the heat of passion.
 

 ¶ 13. Griffin’s own statement is coupled with the witnesses’ corroboration that Griffin was seen with his arm extended, pointing into the room where Daphne was packing, when two shots were fired. Forensic pathologist Dr. Steven Hayne, who performed the autopsy of Daphne, identified two gunshot wounds: one to the nose with “tatooing,” indicating close proximity of the weapon to the body, and one under the chin with “flame injury,” showing that the weapon made contact with Daphne’s skin. Dr. Hayne concluded that either wound would have immediately incapacitated Daphne, and either shot would have been fatal.
 

 ¶ 14. The only testimony that could arguably support Griffin’s claim is Linda’s statement that Griffin was visibly upset, wiping tears from his eyes. This testimony alone is not enough to prove that the killing occurred in the heat of passion. Griffin’s statement to the interrogating officers, the eyewitnesses’ testimonies, and the autopsy results are sufficient to materially contradict Griffin’s version of the killing. Viewing all of the evidence in a light most favorable to the State’s case, we find that a rational jury could find, beyond a reasonable doubt, that Griffin possessed the deliberate design required for the crime of murder. Accordingly, this issue has no merit.
 

 2. Whether the jury’s verdict is against the overwhelming weight of the evidence.
 

 ¶ 15. Although he provides no further argument than what was discussed in issue one, Griffin claims that the jury’s verdict is against the overwhelming weight of the evidence.
 

 ¶ 16. “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844(1118). The evidence is weighed in the light most favorable to the verdict.
 
 Id.
 
 The power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.
 
 Id.
 
 If the verdict is against the overwhelming weight of the evidence, the proper remedy is to grant a new trial.
 
 Id.
 

 ¶ 17. Griffin makes no argument as to how the verdict is against the overwhelming weight of the evidence. His only contention on appeal is that his version of the killing should be accepted so as to support a manslaughter conviction instead of mur
 
 *838
 
 der. This argument goes to the sufficiency of the evidence, and as we held above, we find that there is sufficient evidence to support the jury’s conviction for murder.
 

 ¶ 18. We find that the verdict is not against the overwhelming weight of the evidence and allowing the verdict to stand will not result in an unconscionable injustice. Thus, this issue has no merit.
 

 S. Whether the circuit court erred in granting jury instruction S-j.
 

 ¶ 19. Finally, Griffin claims the circuit court improperly granted jury instruction S-4, which states, in part:
 

 The Court instructs the Jury that if you fail to find the defendant guilty of the felony crime of murder, then you should continue your deliberations to consider the elements of the felony crime of manslaughter.
 

 Griffin argues that this instruction directed the jury to prefer the charge of murder over manslaughter. The State responds that there was no contemporaneous objection made to this instruction.
 

 ¶ 20. The supreme court has held numerous times that: “Failure to make a .contemporaneous objection [at trial] waives an issue for purposes of appeal.”
 
 Spicer v. State,
 
 921 So.2d 292, 305(¶22) (Miss.2006). This issue was clearly waived because, not only was no objection made, but Griffin’s counsel specifically stated in the record that he had no objection to this jury instruction. The circuit judge noted his doubts as to whether there was a sufficient evidentiary basis to give a manslaughter instruction. Even when the circuit judge noted that it was unusual for the State and Griffin to both ask for this instruction, there was no objection. We cannot find error on the part of the circuit court when, despite the circuit judge’s reservation about giving the instruction, both parties requested that the instruction be given.
 

 ¶ 21. Further, this assertion is neither argued by Griffin nor supported with any authority in his brief. He merely presents the same argument that he has throughout the appeal by stating that the evidence was only sufficient to prove a heat-of-passion killing. As we held above, there was sufficient evidence for the jury to consider the crime of murder. Accordingly, this issue has no merit.
 

 ¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . His last name is "Huffman,” but he signed his police statement as "Griffin.”
 

 [2]
 

 . Willie was unable to fully explain what he meant by the term "rack.” He stated that he
 
 *836
 
 saw Griffin do something to the pistol in between the two shots.